UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CERTAIN LONDON MARKET
COMPANY REINSURERS,
     Plaintiffs,

     v.                                       CIVIL ACTION NO. 18-10534-NMG

LAMORAK INSURANCE
COMPANY, f/k/a ONEBEACON
AMERICA INSURANCE
COMPANY,
     Defendant.


REPORT AND RECOMMENDATION ON
PLAINTIFFS' MOTION FOR REMAND (#6).

KELLEY, U.S.M.J.


I.      Introduction.

     This is a reinsurance case in which plaintiffs, Certain London Market Company

Reinsurers (LMR),[1] sued defendant Lamorak Insurance Company in Massachusetts state court.

Lamorak removed the matter to this court. LMR has moved to remand, arguing that a related

case presently pending in state court involving another reinsurer, Certain Underwriters of

Lloyd's, London (Lloyd's), is parallel to this case, and thus this court should abstain from

hearing this case under the rule of *Colorado River Water Conservation Dist. v. United States,*

424 U.S. 800, 821 (1976), or *Brillhart v. Excess Ins. Co. of Am.,* 316 U.S. 491 (1942), as later

affirmed in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). (#6.) Lamorak opposed the motion,

and LMR replied. (##11, 20.) The parties filed supplemental briefs, and the court held an oral

---

[1] LMR includes Turegum Insurance Company, Assicurazioni Generali S.p.A. UK Branch,
National Casualty Company, National Casualty Company of America Ltd., Dominion Insurance
Company Ltd., Stronghold Insurance Company Ltd., and Allianz Suisse Versicherungs-
Gesellschaft AG. (#1-1 at 4.)

argument on  November 26, 2018. (##33, 34, 43, (transcript of hearing).) For the reasons set out

below, this  court recommends that the motion to remand be denied.

II.    Facts and Procedural History.

       This dispute concerns three umbrella insurance policies Lamorak issued to its insured,

Olin Corporation (the Olin Policies), in the 1970s.[2] Reinsurers operating in London, England,

including LMR and Lloyd's, reinsured Lamorak for its liability under the Olin Policies under

three facultative reinsurance contracts[3] issued to Lamorak (the Reinsurance Contracts).

       A.    The Olin Litigation.

       Since the 1970s, Olin, a chemical manufacturing company, has become liable for the

costs of remediating pollution at several sites. Beginning in 1983, Olin sued Lamorak under the

Olin Policies (the Olin Litigation), seeking indemnification for environmental liability. (#29 ¶

15.) *See generally Olin Corp. v. OneBeacon Am. Ins. Co.,* 864 F.3d 130 (2d Cir. 2017). The

litigation proceeded, on a site-by-site basis, for approximately thirty-five years in the United

States District Court for the Southern District of New York. (#29 ¶ 15.)

       In 2013, Olin and Lamorak went to trial in the Southern District of New York with

respect to five Olin remediation sites. 864 F.3d at 140-41. In 2015, after a jury trial, the district

court entered judgment in favor of Olin against Lamorak in the amount of $87,187,173.63. *Id.* at

---

[2] The Olin Policies (policy nos. EY-8057-011, EY-8057-012, and EY-8057-013) covered the period of January 1, 1970 through January 1, 1973. (#8-6 ¶¶ 10-12.)

[3] Facultative reinsurance is "a type of reinsurance coverage that applies to a single policy or risk and is negotiated on an individual basis." (#1-1 at 7.) The facultative reinsurance contracts at issue here bear reference numbers UE27688, UE27689, and UE27690. (#8-6 ¶ 1.)

142. On appeal, the Second Circuit affirmed as to Lamorak's liability, but vacated the judgment and remanded for recalculation of damages. *Id*. at 135 n.1.

In August 2018, after trial began on the remaining pollution sites, Lamorak reached a comprehensive settlement of the Olin Litigation, "resolving essentially all environmental claims." (#29 ¶ 54.) *See Olin Corp. v. Ins. Company of N.A., et. al.*, A.C. No. 1:84-cv-01968-JSR, #2376. In September 2018, Lamorak billed LMR for their share of the settlement payment, seeking payment under the simultaneous payments clause in the Reinsurance Contracts. (#29 ¶ 57.)

Lamorak also previously billed reinsurers, including LMR, for a claim concerning a site in Huntsville, Alabama. *Id*. ¶ 44.  Lamorak asserts that LMR executed a settlement agreement with Olin pertaining to this site some time prior to the billing, which Lamorak refers to as "the Huntsville Settlement Agreement." *Id*. ¶ 17. Lamorak alleges that although LMR paid Olin directly under the Huntsville Settlement Agreement for years, they eventually stopped making payments. *Id*. ¶¶ 41-42. In this suit, Lamorak claims that LMR failed to fulfill its obligations concerning payment for the Huntsville remediation site, in addition to failing to pay the amounts billed in September 2018 for the Olin Litigation settlement. *Id*. ¶¶ 17-20, 38-45, 72.

While the state case involving Lloyd's (the State Court Action) and this case involving LMR are described in detail below, it bears noting at the outset that although both LMR and Lloyd's dispute their obligation to pay Lamorak under the Reinsurance Contracts, Lloyd's has in fact paid under a full reservation of rights, while seeking to recoup payment in the State Court Action. (#33-1 ¶ 38.) Lamorak asserts that LMR has not paid any of the billing, and, as a result, Lamorak's amended counterclaim in this court claims damages for breach of contract and asserts

that LMR violated Mass. Gen. Laws ch. 93A, § 11 (unfair and deceptive conduct). (#29 ¶¶ 64-76.)

    B.  <u>Lamorak's Suit Against Lloyd's in Massachusetts State Court</u>.

In January 2018, Lamorak sued Lloyd's in Suffolk County Superior Court, seeking a declaratory judgment pursuant to Mass. Gen. Laws ch. 231A, § 1 (the Massachusetts Declaratory Judgment Act, or MDJA), that Lloyd's was obligated to pay its share under the Reinsurance Contracts to Lamorak.[4] (#8-1 (complaint).) LMR is not a party to the State Court Action.[5]

Discovery has been ongoing in the State Court Action since July 2018, but after Lamorak and Olin reached settlement in the Olin Litigation, Lamorak and Lloyd's filed amended pleadings in November 2018. (#33-1 at 11; #33-2 at 13.) *See Lamorak Ins. Co. v. Certain Underwriters at Lloyd's, London*, No. 1884CV00200 (Mass. Sup. Ct). Lamorak's amended complaint in the State Court Action alleges two claims against Lloyd's: (a) breach of contract for Lloyd's alleged failure to pay Lamorak for the December 2016 billing regarding Olin's Huntsville remediation site; and (b) an MDJA claim, seeking a declaration to what extent Lloyd's is entitled to a refund of payments it made to Lamorak for the September 2018 billing related to the Olin Litigation settlement, and generally seeking a declaration as to the parties' rights and obligations under the Reinsurance Contracts. (#33-1 ¶¶ 43-50.)

---

[4] At the time Lamorak filed the complaint against Lloyd's in state court, Lamorak had not yet settled the case with Olin. (#29 ¶ 54.)

[5] LMR sought leave to intervene in the State Court Action, but that motion was denied on May 16, 2018. (#23-1.) The order by Judge Kenneth W. Salinger is written in the margin of the motion to intervene: "Now that Lamorak has asserted counterclaims against the Certain London Market Company Reinsurers in the pending federal action, the Service of Suit Clause in the reinsurance contract requires that the claims between Lamorak and those Reinsurers be resolved in that forum." *Id.* As stated *infra*, because this court finds that the case should not be remanded to state court for other reasons, it does not reach the question whether the service of suit clause in the reinsurance contracts applies here.

In addition, the amended complaint states that Lamorak and Lloyd's agreed to submit their dispute over whether Lloyd's was obligated to pay prejudgment interest and amounts alleged to be over the policy limits to final and binding arbitration. *Id*. ¶ 41. The amended complaint states:

> The arbitrator ruled in favor of Lamorak on these issues, finding in pertinent part as follows: 'Under the reinsurance contracts, [Lloyd's] agreed to follow [Lamorak's] policy obligation, which by law would include prejudgment interest. Had the prejudgment interest been for obligations owed by the insured to a third party, these obligations would have stopped at the policy limits. However, because these obligations are owed by the insurer to the insured, they are in addition to the policy limits. [Lloyd's], therefore, owe[s] [Lamorak] for its reinsurance share of prejudgment interest, even if above policy limits.'

*Id*. Lamorak's amended complaint alleges Lloyd's is bound by the arbitration decision and may not again litigate the issues of coverage for prejudgment interest, or the existence of any limits, in the Reinsurance Contracts. *Id.* ¶ 42.

Lloyd's disputes that it is bound by the arbitration decision. Its amended and supplemental counterclaim seeks declarations under the MDJA that it was not obligated to pay Lamorak prejudgment interest, declaratory judgment expenses, or any amount in excess of the limits in the Reinsurance Contracts. (#33-2 ¶¶ 33-44.) In addition, Lloyd's alleges that Lamorak breached the Reinsurance Contracts by billing Lloyd's for amounts not covered by the Reinsurance Contracts, including amounts paid for prejudgment interest; billing Lloyd's in excess of the limits; and improperly allocating the settlement amount with Olin in billing Lloyd's. *Id.* ¶¶ 45-57. Finally, Lloyd's alleges Lamorak was unjustly enriched by receiving payment from Lloyd's that was not required by the Reinsurance Contracts, including prejudgment interest and amounts in excess of the limits, and that Lamorak allocated the settlement amount in bad faith. *Id.* ¶¶ 58-64.

C.  This Action.

On March 15, 2018, LMR sued Lamorak in Suffolk County Superior Court under the MDJA, seeking a declaration of its rights and obligations under the Reinsurance Contracts. (#1-1 ¶ 1.) On March 20, 2018, Lamorak removed LMR's complaint to federal court, asserting diversity jurisdiction. (#1.) After removal, Lamorak filed its Answer, which contained a counterclaim seeking declaratory relief under the federal Declaratory Judgment Act (FDJA), 28 U.S.C. § 2201(a), specifically, a "declaration of the parties' rights and obligations under the Reinsurance Contracts." (#10 at 15-18.) LMR filed its Answer to the original counterclaim on April 26, 2018. (#15.)

After the Olin Litigation was settled, Lamorak filed an amended counterclaim in November 2018, alleging that (a) LMR breached the Reinsurance Contracts by failing to pay amounts billed in December 2016 (related to the Huntsville remediation site) and September 2018 (related to the Olin Litigation settlement) (#29 ¶ 66); (b) LMR breached the simultaneous payments clause in the Reinsurance Contracts by failing to pay Lamorak's September 2018 billing, *id*. ¶ 67; (c) LMR engaged in unfair and deceptive conduct in violation of Mass. Gen. Laws ch. 93A, § 11 by, among other things, changing position concerning its obligations under the Reinsurance Contracts, failing to pay under the Huntsville Settlement Agreement even though it had previously paid under the agreement, engaging in unreasonable and unfair claims-handling and settlement practices, failing to comply with the simultaneous payments clause in the Reinsurance Contracts, and by prematurely filing this action, *id*. ¶ 72.

In defense to the amended counterclaim, LMR asserts, inter alia, that: (a) the terms and conditions of the Reinsurance Contracts bar Lamorak's counterclaims; (b) Lamorak's post-settlement allocation for the September 2018 billing was improper, unreasonable, and done in

6

bad faith; (c) Lamorak breached its duty of utmost good faith by improperly handling the Olin claims and failing to cooperate with LMR; (d) Lamorak is not entitled to prejudgment interest under the Reinsurance Contracts; (e) Lamorak is not entitled to recover expenses incurred in litigating the coverage dispute with Olin or other defense expenses under the Reinsurance Contracts; (f) Lamorak's claims are barred by its failure to support its reinsurance presentation, or make its records available for LMR's inspection; and (g) LMR's liability is capped by the limits in the Reinsurance Contracts. (#32 at 21-22.)

III.    Applicable Law.

A.    The Law Pertaining to Removal.

A defendant may remove a civil action from state court where the federal district court has original jurisdiction. 28 U.S.C. §§ 1441(a), 1446. Here, Lamorak timely removed the state court complaint, asserting this court's original diversity jurisdiction under 28 U.S.C. § 1332(a). (#1 at 2-3.) A motion to remand is the proper procedure for challenging an opposing party's removal, and remand to state court may be ordered sua sponte or on a party's motion, for either lack of subject matter jurisdiction or for any defect in the removal procedure. *See* 28 U.S.C. § 1447(c). A defendant invoking the federal court's removal jurisdiction bears the burden of establishing diversity exists, and that removal was proper. *See generally Wilson v. Rep. Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Ortiz-Bonilla v. Federacion de Ajedrez de Puerto Rico, Inc.,* 734 F.3d 28, 34 (1st Cir. 2013).

LMR does not challenge Lamorak's removal on procedural grounds, nor does it seriously challenge the court's diversity jurisdiction.[6] Rather, as stated above, LMR argues that the court

---

[6] LMR contends that Lamorak's representations about its principal place of business "lack transparency and may be incorrect." (#7 at 3-4.) It asserts that Lamorak "runs its business from Massachusetts, not Pennsylvania," and under 28 U.S.C. § 1441(b), a properly-joined and served

should abstain from hearing this action under the Supreme Court's precedent in *Colorado River,* 424 U.S. at 821, or under the rule of *Brillhart,* 316 U.S. 491, as later affirmed in *Wilton,* 515 U.S. 277.

 B.  The Abstention Doctrines of *Colorado River* and *Wilton/Brillhart.*

 1.  *Colorado River*.

 Diversity jurisdiction is non-discretionary, and federal courts have a "strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (collecting cases); *see also Colorado River,* 424 U.S. at 821 ("federal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them") (internal marks omitted). "It has long been established that the presence of parallel litigation in state court will not in and of itself merit abstention in federal court." *Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 27 (1st Cir. 2010) (citing *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). The Supreme Court has held, however, that in certain "exceptional circumstances," a district court may abstain from exercising jurisdiction where a concurrent parallel state proceeding is pending, if abstention would promote "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River,* 424 U.S. at 817.

 Abstention under the *Colorado River* doctrine is the exception, not the rule. *Id.* at 813. The First Circuit teaches that "[t]he crevice in federal jurisdiction that *Colorado River* carved is

---

defendant may not remove a case to federal court if it is a citizen of the state in which the case was filed. *Id.* Lamorak responds that its principal place of business is Pennsylvania, but a third party whose offices are in Boston, Massachusetts, manages its claims under the Reinsurance Contracts. (#11 at 16.) LMR does not further press the matter in its reply, stating only that Lamorak's "representations on this point should be taken with a grain of salt." (#20 at 8.) The court will not consider LMR's under-developed argument regarding diversity jurisdiction.

a narrow one. Of all the abstention doctrines, it is to be approached with the most caution, with 'only the clearest of justifications warranting dismissal.'" *Jimenez,* 597 F.3d at 28 (citing *Colorado River,* 424 U.S. at 819) (internal marks omitted).

In deciding whether to abstain under *Colorado River*, the court considers the following list of non-exclusive factors endorsed by the First Circuit:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Id.* at 27–28 (citing *Rio Grande Cmty. Health Ctr. v. Rullan,* 397 F.3d 56, 71–72 (1st Cir. 2005)).

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Id.* at 28 (citing *Colorado River,* 424 U.S. at 818–19). In other words, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16 (1983)).

### 2. *Wilton/Brillhart*.

In *Wilton,* the Supreme Court endorsed a more lenient test for courts to apply in determining whether to exercise discretion to decide claims brought under the FDJA. 515 U.S. at 288-89. *Wilton* underscored that the FDJA gives federal district courts "discretion in determining

whether and when to entertain an action under the [FDJA]." *Id.* at 282. As the First Circuit has noted, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *DeNovellis v. Shalala*, 124 F.3d 298, 313 (1st Cir. 1997) (citing *Wilton,* 515 U.S. at 288).

The Supreme Court did not endorse a specific test in *Wilton*, but it cited with approval the factors in *Brillhart,* 316 U.S. 491. *Wilton*, 515 U.S. at 283. Those factors are: (1) the scope of the pending state court proceeding and the nature of defenses open there; (2) whether the claims of all parties in interest can be adjudicated satisfactorily in the state proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are amenable to process in the state proceeding; and (5) the virtue of avoiding uneconomical proceedings, vexatious proceedings, and gratuitous interference by a federal court with an orderly and comprehensive suit pending in a state court, presenting the same issues, not governed by federal law, between the same parties. *Id.* at 283.

Since the *Wilton* decision, courts in this circuit have applied some variation of the *Brillhart* factors. *See*, *e.g.*, *Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D. Mass. 2004) (citing *Wilton* and applying the *Brillhart* factors); *Travelers Cas. & Sur. Co. v. Boston Gas Co.*, 76 F. Supp. 2d 59, 62 (D. Mass. 1999) (same).

> The question for a district court presented with a suit under the Declaratory Judgment Act . . . is whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.

*National Union Fire Insurance Co. of Pittsburgh, PA v. Maritime Terminal, Inc.*, No. CIV.A. 14-14541-DJC, 2015 WL 3952766, at *3 (D. Mass. June 29, 2015) (quoting *Wilton*, 515 U.S. at 282) (alteration in original) (internal quotation marks and some citations omitted).

IV.   Discussion.

  A. The Parties' Arguments.

LMR argued at the outset of this matter, prior to the settlement of the Olin Litigation and Lamorak's filing of an amended counterclaim, that there is a "substantial nexus" between the State Court Action involving Lloyd's and this case, as the parties in both cases "seek declaratory judgments as to rights and obligations under the same reinsurance contracts, involving many of the same defenses, arising from the same overall loss and the same underlying insurance program." (#6 at 2.) LMR asserted that both proceedings "will likely require resolution of unsettled questions of state law," specifically, law relating to the interpretation of limits language in reinsurance agreements, and that allowing the cases to proceed in different courts "poses the risk of inconsistent rulings interpreting the same contracts." (#7 at 3.) Remand would "promote judicial economy and discourage vexatious conduct and forum shopping." *Id.*

In a supplemental memorandum filed after the settlement of the Olin Litigation and the filing of Lamorak's amended counterclaim, LMR argued that Lamorak's addition of the Chapter 93A claim was "a transparent effort to impact the Court's abstention analysis" and "is entirely derivative of Lamorak's breach of contract claim." (#34 at 3.) LMR argued that the cases "still substantially overlap" and that the court should remand under *Colorado River* or *Wilton/Brillhart*. *Id.* at 5.

In opposition, Lamorak contends first that the Reinsurance Contracts contain a service of suit clause that requires LMR to "consent to jurisdiction in the court of Lamorak's choice, and [LMR has] thus waived [its] right to contest" removal. (#11 at 8-10.) Second, Lamorak asserts that this action is not parallel to the State Court Action between Lamorak and Lloyd's, and therefore, neither *Colorado River* nor *Wilton/Brillhart* permit this court to abstain from

exercising jurisdiction in this removed case. *Id*. at 10-12. Third, even if the court finds this action is parallel to the State Court Action, *Colorado River* applies and precludes remand. *Id.* at 12-13. Finally, even if the court applies the more lenient standard of *Wilton/Brillhart*, abstention and remand are not warranted. *Id*. at 13-16.

As explained below, the court finds that this matter and the State Court Action are not sufficiently parallel for application of *Colorado River* or *Wilton/Brillhart*. Even assuming arguendo that the cases are parallel, the court finds that this matter should not be remanded. Because the court finds that this case should remain in federal court, the court does not address the parties' dispute concerning the service of suit clause.

> B.   This Case and the State Court Action are Not Parallel.

>> 1.   Legal Standard.

Before considering whether abstention is warranted under either the *Colorado River* or *Wilton/Brillhart* doctrine, the court must first determine whether this suit is parallel to the State Court Action. *See Colorado River*, 424 U.S. at 818 (holding that in limited circumstances "dismissal of a federal suit due to the presence of a concurrent state proceeding" may be warranted); *Wilton*, 515 U.S. at 290 (upholding lower court's decision to stay action for declaratory relief "where parallel proceedings, presenting opportunity for ventilation of the same state law issues, were underway in state court"); *see also Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 533 (1st Cir. 1991) (*Villa Marina I*) (holding that federal and state court actions were "sufficiently parallel to trigger the *Colorado River* doctrine").

In order to be parallel, there need not be a "perfect identity" of issues between two cases, s*ee Villa Marina I,* 947 F.2d at 533, or parties, *see National Union Fire Insurance Co. of Pittsburgh, PA*, 2015 WL 3952766, at *4. Rather, courts in this district, relying on the First

Circuit's "broad reading of 'parallel proceeding' in other contexts," *Standard Fire Insurance Company v. Gordon*, 376 F. Supp. 2d 218, 226 (D.R.I. 2005), have concluded that state and federal proceedings are parallel where "substantially the same parties are contemporaneously litigating substantially the same issues" and there is a "substantial likelihood that the state litigation will dispose of all the claims presented in the federal case." *Mass. Biologic Labs. of the University of Massachusetts v. MedImmune,* 871 F. Supp. 2d 29, 36 (D. Mass. 2012); *see also Flectat Ltd. v. KASL Seabreeze, LLC*, 257 F. Supp. 3d 152, 157 (D. Mass. 2017) (internal citations omitted); *Puzey v. BJ's Wholesale Club, Inc*., 2012 WL 1114164, at *3 (D. Mass. 2012). If the suits are not parallel, then the court need not conduct any further analysis. *See, e.g., Amvest Corp v. Mayoral Amy,* 778 F. Supp. 2d 187, 198 (D. P.R. March 2011) ("If the proceedings are not parallel, then the *Colorado River* inquiry comes to an end.'"))

　　　　　　　2.　Similarity of Parties.

LMR acknowledges that it is not a party to the State Court Action, but asserts that it is a party-in-interest to the Reinsurance Contracts, so that LMR and Lloyds are "substantially the same parties." (#7 at 12-13.) To evaluate this claim, one must compare the issues raised in the two cases.

　　　　　　　3.　Similarity of Issues and Likelihood that the State Litigation will Dispose of
　　　　　　　　　All the Claims Presented in the Federal Case.

LMR is correct that the two suits overlap in many respects (#7 at 12-15), however, there are several substantial differences between the two actions. For example, in its answer to the amended and supplemental counterclaim, LMR asks the court to declare that it does not owe Lamorak for "loss or loss expense amounts" because Lamorak breached its duty of the utmost good faith "as a result of its improper handling of the Olin claim and its failure to communicate critical information to London Market Reinsurers." (#32 at 23.)  Lloyd's does not make this

claim. *See* #33-2 (amended and supplemental counterclaims). As counsel for Lamorak argued at the hearing on this matter, "[I]f that defense is actually discovered and litigated, what does it mean?  It means a 35-year litigation becomes part of the discovery process … [t]hat's a mess, and that's not going on in the State Court action." (#43 at 36.)

Another significant difference in the cases is that Lloyd's and Lamorak previously arbitrated several issues respecting the Reinsurance Contracts, including whether Lloyd's is liable for prejudgment interest, and whether the Reinsurance Contracts impose a limit on Lloyd's liability. An important issue in the State Court Action is whether Lloyd's is collaterally estopped by the arbitration decision. (#8-1 ¶¶ 29-32.) LMR was not a party to the prior arbitration involving Lloyd's and Lamorak. LMR, like Lloyd's, raises issues concerning payment of prejudgment interest and whether the Reinsurance Contracts impose a maximum liability amount (#1-1 ¶¶ 38-40, 48-49), but if the state court finds that the prior arbitration award is binding on Lloyd's, a question that is wholly absent from the litigation here, then the state court need not go any further concerning those issues.

The settlement of the Olin Litigation, and LMR's subsequent refusal to pay anything in response to Lamorak's billings, further weaken LMR's argument that the issues in the cases are substantially similar, and that the State Court Action will dispose of all the claims presented in this federal case. As stated above, after the Olin Litigation settled, Lloyd's paid Lamorak's billing under the Reinsurance Contracts under a reservation of rights. (#33 at 4.) LMR, on the other hand, refused to pay. (#1-1 ¶ 2.) LMR, unlike Lloyd's, thus will have to litigate whether it has violated its obligations under the Reinsurance Contracts with regard to this issue, including whether it violated the simultaneous payments clause. (#29 ¶¶ 58-61.)

Finally, Lamorak has asserted a counterclaim in the instant case under Mass. Gen. Laws ch. 93A, § 11, alleging that LMR engaged in unfair and deceptive conduct. Among other claims, Lamorak alleges that LMR changed its position concerning its obligations under the Reinsurance Contracts without communicating to Lamorak how, why, or when its position changed until LMR allegedly repudiated the Reinsurance Contracts in March 2018; failed to pay Lamorak under the Huntsville Settlement Agreement even though it previously had paid Olin under the agreement; engaged in unreasonable and unfair claims-handling and settlement practices; failed to comply with the simultaneous payments clause; and prematurely filed this action. (#29 ¶¶ 69-76.) The claims set out in detail what acts, over many years, constituted a violation of Chapter 93A. *Id.* No claim under Chapter 93A has been made in the State Court Action against Lloyd's.

LMR asserts that the court should disregard the Chapter 93A claim and breach of contract claims when conducting its analysis, as this case originally was pled as a declaratory judgment action, and Lamorak simply "tacked on" the coercive claims in order to avoid *Wilton/Brillhart*'s discretionary standard. (#34 at 2-3.) The court disagrees. Amending its counterclaim to assert a claim for damages was a logical step for Lamorak, given the Olin Litigation settlement. The addition of the contract claim was forewarned by Lamorak in its opposition, where Lamorak indicated it would seek to amend its counterclaim once the Olin Litigation was reduced to a judgment: "A final judgment will likely issue very soon, after which Lamorak will bill the reinsurers for their share of its liability. Lamorak will then amend its pleadings in this action to seek damages." (#11 at 12.) Further, the Chapter 93A claim is pled in detail, and while it is premature to assess its validity, the court cannot say that it "borders on the frivolous," as LMR argues. (#34 at 3.)

This is not a case where one party simply "added to the mix" certain claims, *compare Mass. Biologic Labs.,* 871 F. Supp. 2d at 35-36 (holding that state and federal cases were parallel where "the overarching issue in both cases" were rights and obligations under the same agreement and "the companies with a stake in the outcome of the dispute are parties to both actions"). Given the recent developments in the case, where the Olin Litigation was settled and Lamorak billed LMR for its share under the settlement, the contract claims and Chapter 93A claims are more than peripheral to the case. Nor is this a case like *Clark v. Lacy*, 376 F.3d 682 (7th Cir. 2004), where the addition of certain defendants to one of the actions had "little impact on the overall similarity of the disputes." *Id.* at 686-87. Although this may be a close case, on balance, the court finds that this action is not sufficiently parallel to the State Court Action to trigger analysis under *Colorado River* or *Wilton/Brillhart. See Villa Marina I,* 947 F.2d at 533.

C. Applying the *Colorado River* Factors.

Even if, arguendo, the court found this case to be parallel to the State Court Action, the court still would not remand the case. In *Mass. Biologic Labs.*, Judge Gorton acknowledged that there is a circuit split regarding how to analyze abstention questions in cases that present both declaratory and damages claims. 871 F. Supp. 2d at 35-36. The court there noted that the First Circuit "has not yet staked out a clear position on the circuit split," but that the "surgical approach" was "a method at least approved of, if not mandated," by the First Circuit in *Rossi v. Gemma*, 489 F.3d 26 (1st Cir. 2007).  *Id.* at 35. [7]  This test, formerly endorsed by the Fourth

---

[7] For a discussion of the circuit split, s*ee Rarick v. Federated Serv. Ins. Co.,* 852 F.3d 223, 228–29 (3d Cir. 2017). The Second, Fourth, Fifth, and Tenth Circuits apply *Colorado River* to all the claims. *See, e.g., Vill. Of Westfield v. Welch's*, 170 F.3d 116, 125 n. 5 (2d Cir. 1999); *VonRosenberg v. Lawrence,* 781 F.3d 731, 735 (4th Cir. 2015); *New England Ins. Co. v. Barnett,* 561 F.3d 392, 395 (5th Cir. 2009); *United States v. City of Las Cruces,* 289 F.3d 1170, 1181-82 (10th Cir. 2002). The Seventh and Ninth Circuits, on the other hand, apply an "independent claims test," balancing the court's duty to hear coercive claims with its discretion to decline

Circuit, *see Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006), consists of applying *Colorado River* to the coercive claims and *Wilton/Brillhart* to the declaratory claims.[8] *Id.*; *see also Teknor Apex Co. v. Hartford Acc & Indem. Co.*, 2012 WL 6840498 (D.R.I. 2012) (holding that in light of the First Circuit's decision in *Rossi*, the "surgical approach" should be followed in analyzing abstention questions including both declaratory and damages claims). Therefore, this court will apply the *Colorado River* test to the contract claims and claims under Chapter 93A, and the *Willton/Brillhart* test to the declaratory judgment claims. *Mass. Biologic Labs.*, 871 F. Supp. 2d at 35-36.

As set out above, the First Circuit has endorsed the following factors for the *Colorado River* analysis:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Jimenez*, 597 F.3d at 27–28 (citing *Rio Grande Cmty. Health Ctr. v. Rullan,* 397 F.3d 56, 71–72 (1st Cir. 2005)).

---

jurisdiction over declaratory relief claims. *See, e.g., R.R. St. & Co., Inc. v. Vulcan Materials Co.*, 569 F.3d 711, 716–17 (7th Cir. 2009); *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1113 (9th Cir. 2001). Finally, the Third and Eighth Circuits apply a "heart of the matter/essence of the law suit" test, which balances the interests at stake in the suit by examining the gravamen of the litigation. *See Rarick,* 852 at 228-29; *see also Royal Indem. Co. v. Apex Oil Co.,* 511 F.3d 788 (8th Cir. 2008).

[8]After *Mass. Biologic Labs.* was decided, the Fourth Circuit clarified that it joins the Second, Fifth, and Tenth circuits in applying *Colorado River* to cases with claims seeking both declaratory and monetary relief. *See VonRosenberg,* 781 F.3d at 735.

The first two factors are neutral. There is no res involved,[9] and both the state and federal courts are in Boston, Massachusetts, so there is no geographic inconvenience.

The third factor, avoidance of piecemeal litigation, does not weigh in favor of abstention. The piecemeal litigation to be avoided under *Colorado River* is more than the "repetitive adjudication" that occurs in any state-federal parallel proceedings. *See Jimenez*, 597 F.3d at 29. Rather, this factor requires something that moves the matter "beyond the pale of duplicative proceedings." *Id.* The First Circuit has instructed:

> Dismissal is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues. Rather, concerns about piecemeal litigation should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, and weigh in favor of dismissal *only if there is some exceptional basis for dismissing one action in favor of the other.*

*Id.* (emphasis added). The "canonical example of such an exceptional basis is a clear federal policy in favor of unified proceedings pursuant to a federal statute that is at issue in the case." *Id.* at 29 (collecting cases). Here, there are no federal statutory schemes, policies, or other exceptional circumstances that tip the balance of this factor toward abstention.

The First Circuit has recognized "there are other reasons why the piecemeal litigation factor might loom large in a given case." *Id.* In *Liberty Mutual Insurance Company v. Foremost McKesson, Inc.,* 751 F.2d 475 (1st Cir. 1985), for example, the First Circuit gave "substantial

---

[9] The first factor applies to situations where a court assumes jurisdiction over a res during an *in rem* proceeding. *United States v. Fairway Capital Corp.,* 433 F. Supp. 2d 226, 239 (D.R.I. 2006), *aff'd by* 483 F.3d 34 (1st Cir. 2007) (internal citations omitted). "An *in rem* or *quasi in rem* action requires that the court have possession or control of the property that is the subject of the suit to give effect to its jurisdiction." *Id.* (citing *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466 (1939); *Penn Gen. Cas. Co. v. Pennsylvania,* 294 U.S. 189, 195 (1935)). Because this is not an *in rem* or *quasi in rem* action, the first factor is inapplicable.

weight to the possibility that the insurance contract might be interpreted differently in the state and federal proceedings, leaving the insured 'without sufficient liability insurance coverage from the insurers after years of paying premiums.'" *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991) (citing *Foremost McKesson,* 751 F.2d at 477).

      *Foremost McKesson* is distinguishable from the instant case and illustrates just how "exceptional" a case must be to warrant abstention. McKesson manufactured a synthetic estrogen known as diethlstibestrol (DES), and was named as a defendant in "numerous actions commenced by individuals" who alleged "that they sustained injuries caused by exposure to various chemicals and pharmaceutical products, including DES, which were sold, distributed or manufactured by McKesson." *Foremost McKesson*, 751 F. 2d at 477. Before the action was filed in the district court here, an action had been commenced in the Superior Court in California, that was "the more comprehensive of the two," involving "all of McKesson's insurers and all of the products for which McKesson faces potential liability." *Id*. In affirming the district court's stay of the federal action under *Colorado River*, the First Circuit found there was a "real possibility that the two courts might interpret the same standard policy language differently," with the result that McKesson would find itself without sufficient liability insurance coverage from the insurers after years of paying premiums. *Id.* The court found the California state court to be the "logical forum" to determine the rights and obligations of the parties. *Id.*

      The First Circuit's holding in *Foremost McKesson* indicates that there must be some compelling reason for the court to decline to hear a case. The court may not remand simply because the state court "seem[s] the better place for the issues to be resolved." *Villa Marina I,* 915 F.2d at 13. Even though "staying or dismissing a duplicative federal lawsuit may avoid friction between jurisdictions, reduce inefficient use of judicial resources and limit the financial

burden on litigants," such a "liberal approach toward dismissal is … inconsistent with the *Colorado River* requirement that the balance be "'heavily weighted in favor of the exercise of jurisdiction.'" *Id.* (quoting *Moses H. Cone*, 460 U.S. at 16)).

Here, LMR is not a party to the State Court Action. Lamorak, which after all is the insured party in this matter, and risks losing liability coverage, removed this case to this court. Given that Lloyd's disputes whether the arbitration in which Lloyd's and Lamorak engaged is binding, the state court may well not even reach the important question of whether Lamorak is entitled to prejudgment interest and whether liability is capped under the Reinsurance Contracts. Thus, unlike *Foremost McKesson*, there is no certainty that both courts will be called upon to interpret the same provisions in the Reinsurance Contracts. This factor does not weigh in favor of abstention.

The court finds that the fourth factor, the order in which the forums obtained jurisdiction, does not weigh in favor of abstention. This factor does not merely examine which case was filed first, but rather, looks to which case is more advanced. *See Jimenez,* 597 F.3d at 30 (observing that "[t]he label for this factor is something of a misnomer, as the relative progress of the suits is more important than the strict order in which the courts obtained jurisdiction") (internal citation and marks omitted). Although the State Court Action was filed first, and is further along than this case, Lamorak filed an amended complaint and Lloyd's filed an amended and supplemental counterclaim in November 2018. There is a note on the docket of that case dated November 28, 2018: "Rule 16 conference cancelled and rescheduled for 6/26/19 when fact discovery will be near complete." *See Lamorak Ins. Co. v. Certain Underwriters at Lloyd's, London,* No. 1884CV00200 (Mass. Sup. Ct). Thus, assuming the state court's assessment is correct, fact discovery in that matter will not be finished until after June 2019. The First Circuit has stated

that the fact that discovery has commenced in a state court action is not definitive in deciding whether this factor weighs in favor of abstention. *Cf. Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 15 (1st Cir. 1990) ("*Villa Marina II*") (holding that even where depositions had been taken and Commonwealth court had held three-day evidentiary hearing on motion for preliminary injunction, it was unclear whether the depositions and hearing "represent progress that should count in the balance toward dismissal."). On balance, the court finds this factor does not weigh in favor of abstention.

The fifth factor, whether state or federal law applies, also does not weigh in favor of abstention. While LMR argues that there is a novel issue of state law presented in both cases concerning limits in reinsurance agreements (#7 at 3), LMR does not even concede that Massachusetts law applies to these cases. (##7 at 13-14, 15 n. 29). At the oral argument on this matter, counsel for LMR stated it could not decide which law applied until it received the underwriting file in discovery. (#43 at 20-21.)  At any rate, as the First Circuit has instructed, it is "only in 'rare instances' that the presence of state-law issues creates any momentum toward deferring to pending local litigation under the *Colorado River* doctrine." *Nazario-Luga v. Caribevision Holdings, Inc*., 670 F.3d 109, 118 (1st Cir. 2012) (internal citations omitted). There is nothing here to suggest that this is one of those "rare instances." Thus, the court cannot find this factor weighs in favor of abstention.

The sixth factor is neutral because, as both parties concede, the state forum is adequate to protect each party's interests. *See United States v. Fairway Capital Corp.,* 483 F.3d 34, 43 (1st Cir. 2007) (holding that the adequacy of the state forum is relevant only when it would disfavor abstention). The seventh factor is neutral because there is nothing vexatious or contrived about Lamorak's removing the case to this forum. The eighth factor is neutral, as plaintiff did not file

in federal court to evade the policies of 28 U.S.C. § 1441. *See Spark Energy Gas, LP v. Toxikon Corp.*, 864 F. Supp. 2d 210, 221 (D. Mass. 2012).

The court turns to whether abstention is warranted concerning the declaratory action claims under the *Wilton/Brillhart* factors. The court has broad discretion in this area; the inquiry turns on "considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288.  The court declines to exercise that discretion. Given the court's analysis of the factors under *Colorado River* as they pertain to the coercive claims in this matter, the court concludes that a remand to state court would not be more efficient or promote wise judicial administration. As the First Circuit has observed, "[d]uplication and inefficiency are not enough to support a federal court's decision to bow out of a case over which it has jurisdiction." *Villa Marina II,* 915 F.2d at 13.  *See also Mass. Biologic Labs.*, 871 F. Supp. 2d at 38 (holding that in parallel proceedings, where only factor that favored a stay was that the non-federal case had been filed first, court would "exercise its 'virtually unflagging obligation' to exercise its jurisdiction over the presented claims") (quoting *United States v. Fairway Capital Corp.*, 483 F.3d 34, 43 (1st Cir. 2007).

V.    Conclusion.

For the reasons stated above, this court RECOMMENDS that LMR's Motion to Remand (#6) be DENIED.

VI.    Review by District Judge

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within fourteen days of service of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The

parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge

February 20, 2019